IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM C. PEAKE, | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| PENNSYLVANIA STATE POLICE, | ) | |
| a department of the COMMONWEALTH | ) | |
| OF PENNSYLVANIA, | ) | |
| Defendant | ) | |

## PLAINTIFF'S COMPLAINT FOR DAMAGES AND OTHER RELIEF

AND NOW, this 4th day of December, 2012, comes WILLIAM C. PEAKE, Plaintiff above named, by and through his undersigned counsel, and files this Complaint, respectfully alleging the following:

### Jurisdiction

1.     Jurisdiction of this federal court is invoked pursuant to the Court's federal question jurisdiction, 29 U.S.C. Section 1331, Count I of this lawsuit being brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e et seq., alleging race discrimination in employment.

### Parties

2.     Plaintiff is William C. Peake, a male individual who resides at 125 Walnut Street, Sewickley, Allegheny County, Pennsylvania 15143.

3.     Defendant is the Pennsylvania State Police, a department of the Commonwealth of Pennsylvania, doing business in Pennsylvania with administrative and executive headquarters at 1800 Elmerton Avenue, Harrisburg, Pennsylvania 17110; at all

1

times material hereto, Defendant was an employer as defined in Title VII of the Civil Rights Act of 1964, as amended, as it had 15 or more employees.

## AS AND FOR A FIRST CAUSE OF ACTION

(Race discrimination, in violation of the
Title VII of the Civil Rights Act of 194, as amended)

4.      Plaintiff began employment with Defendant as a cadet, and successfully completed his training at the State Police Training Academy, and graduated on or about May 4, 2009.

5.      Plaintiff is African-American.

6.      Plaintiff  was one of only four African-Americans out of approximately 75 graduates of the State Police Training Academy during the time he was being trained; he was the only one of the African-American graduates who was assigned to the Western Pennsylvania area; the other three African-American graduates were assigned to the Philadelphia area.

7.      Upon completing his basic training with Defendant, Plaintiff became a probationary state trooper.

8.      The length of Plaintiff's probationary period as a probationary state trooper was to be eighteen (18) months, and was scheduled to expire on November 3, 2010.

9.      Plaintiff was ultimately assigned to the Uniontown barracks, near the end of November, 2009; that location was part of Troop B, which is headquartered in Washington, Pennsylvania, and which is located at 83 Murtland Avenue, Washington, Pennsylvania 15301.

10.     Plaintiff thereafter received certificates showing that he had successfully passed Defendant's training course regarding report writing and communications:

a.     A Certificate of Training was awarded to him on April 15, 2010, regarding the "CC-Police Reports" course;

b.     A Certification of Training was awarded to him on April 21, 2010, regarding the "Employee-Written Communications" course.

11.      At various times during his employment with Defendant, Plaintiff was notified that his report writing was deficient.

12.     Plaintiff consistently and persistently attempted to demonstrate that his report writing was acceptable, but nothing he did in that regard could fully satisfy all of his superiors.

13.     Plaintiff was informed by a trainer at a report writing class, Corporal Monkelis, that there was nothing substantially wrong with his report-writing, and that it compared favorably to those who had been on the job for years, as regular troopers.

14.     At another training at Defendant's training academy in the Hershey area, Corporal Knighted informed him that his report-writing was satisfactory, and that he would advise Sergeant Glover at the Uniontown barracks that Plaintiff had successfully completed the training.

15.     In the last two written performance evaluations he received, the rater indicated that Plaintiff was making progress in a number of categories.

16.     In the last few months of his employment, Plaintiff was taken off the road for all but a short time, i.e., was not permitted to perform his normal duties as an on-the-highway police office, and was assigned almost exclusively to desk duty.

17.     On November 3, 2010, Plaintiff was notified by Defendant that his employment was being terminated effective that very day, and was directed to leave the barracks.

18.     Plaintiff was called back into the Uniontown location on November 4, 2012, to turn in his badge, keys, etc., and had a meeting with additional representatives of Defendant; at that time, a copy of a letter dated November 3, 2010, from Kim H. Studenroth, Director of Human Resources, notifying him of such termination.

19.     At the aforesaid November 4, 2012, meeting, Defendant told him to sign the aforesaid termination letter, and date it for November 3, 2012; Plaintiff complied with that direction.

20.     Defendant's alleged reasons for terminating Plaintiff's employment as set forth in such letter, were as follows:

> "…A Review Panel was convened at the Commissioner's direction to review your performance and disciplinary files.  The Panel has concluded that as a result of your lack of solid job knowledge and basic police skills, along with officer/public safety concerns, you do not meet the standards set forth of a Pennsylvania State Police Trooper."

21.     The alleged reasons set forth in the aforesaid November 3, 2010, termination letter, had not previously been brought to this attention as major concerns.

22.     The reasons set forth in the November 3, 2010, termination letter had no substantial basis in fact, and are not worthy of belief.

23.     Plaintiff was denied the opportunity to confront the alleged evidence used by Defendant in justification of its termination of him.

24.     Plaintiff was denied the opportunity to conform his behavior to the standards which Defendant had previously failed to communicate to him.

25.    Plaintiff was the only probationary trooper assigned to the Uniontown barracks who was African-American.

26.    There were only four additional troopers out of the entire complement of troopers assigned to the Uniontown barracks during the time when Plaintiff worked there, who were African-American.

27.    As set forth in paragraph 6 above, Plaintiff was one of the few African-Americans who graduated from the state police training academy during the time period when he was there; it is unknown whether the three other African-American probationary employees successfully completed their probationary periods.

28.    Plaintiff was falsely accused of having used "Ebonics" in his incident reports.

29.    At least one Caucasian probationary trooper assigned to the Uniontown barracks had had his probationary period extended, and had received more coaching and mentoring than did Plaintiff; this individual was not terminated, was kept on as a trooper, and still is employed today as a trooper.

30.    Plaintiff was treated differently from at least one other probationary trooper at the Uniontown barracks, i.e., the individual referred to in paragraph 29, because of his race.

31.    Plaintiff was judged by different and more harsh standards than other probationary troopers, because of his race.

32.    Defendant has a policy and practice of not hiring a sufficient number of African-Americans, into trooper positions.

33.    Defendant hires a disproportionately high number of Caucasians into trooper positions.

34.    Defendant has a long history of not hiring a sufficient number of African-Americans into trooper positions.

35.    Defendant failed to provide a meaningful opportunity for Plaintiff to prove that he was qualified to complete his probationary period and to become a full-fledged state trooper; Defendant placed numerous obstacles in Plaintiff's path toward becoming a full-fledged state trooper.

36.    In terminating Plaintiff's employment, Defendant was motivated by an intent to discriminate against Plaintiff because of his race.

37.    By reason of the foregoing, Defendant has violated Title VII of the Civil Rights Act of 1964, as amended.

38.    As a direct and proximate result of the termination and of the hostile environment to which he was subjected, Plaintiff suffered emotional and physical distress, embarrassment and humiliation, and pain and suffering, and is entitled to compensatory damages in an amount to be determined by a jury.

39.    In committing the actions referred to above, Defendant acted knowingly, willfully, intentionally, in bad faith, and with reckless disregard of the law, and Plaintiff is entitled to recover punitive damages from Defendant, in an amount to be determined by a jury.

40.    Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission (EEOC); such charge was docketed at EEOC Charge No. 533-2011-01018.

41.    All administrative prerequisites to the filing of this action have been satisfied; a notice of right to sue dated September 5, 2012, was issued by the EEOC, and was received

by Plaintiff shortly thereafter; this complaint is being filed within 90 days of Plaintiff's receipt of such notice.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court grant him the following relief, following trial by a jury:

      a.      The issuance of an injunction directing Defendant to restore to Plaintiff all benefits to which he would be entitled had he been retained as an employee, or in lieu of injunctive relief, Plaintiff demands the present value of the loss of benefits resulting from the termination of his employment;

      b.      All back pay and other benefits to which he would be entitled, plus pre-judgment interest at the lawful rate on the liquidated amount;

      c.      The issuance of a judgment declaring that the termination of Plaintiff from employment was in violation of his right to be free from race discrimination in employment, as guaranteed to him by Title VII of the Civil Rights Act of 1964, as amended;

      d.      Reinstatement, or if reinstatement is not ordered by the Court, damages for the loss of front pay and benefits;

      e.      Compensatory damages in an amount to be determined by a jury;

      f.      Punitive damages in an amount to be determined by a jury;

      g.      Damages resulting from negative income tax consequences if a damage award is paid in a lump sum;

      h.      Attorneys' fees and costs and expenses of litigation;

      i.      Such other and further relief as may be appropriate.

JURY TRIAL DEMANDED.

s/James H. Logan
James H. Logan, Esq.
PA ID #10485
Logan & Logan
Suite 3201 Grant Bldg.
Pittsburgh, PA 15219
412-765-0983
Fax: 412-765-2781
EM: loganloganemp@yahoo.com
Attorney for Plaintiff